NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WALESKA VELAZQUEZ, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 10-4381 (SRC) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Waleska Velazquez ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision is supported by substantial evidence and will be affirmed.

PROCEDURAL HISTORY

On December, 15 2006, Plaintiff filed an application for DIB and SSI benefits pursuant to Sections 216(I), 223, and 1614(a)(3)(A) of the Social Security Act, codified as 42 U.S.C. §§ 416(I), 423, 1382c(a)(3)(A), respectively. (Tr. 12.) The plaintiff alleges disability based primarily upon diabetes, osteoarthritis, obesity, and an affective disorder. (Id.) The claim was denied initially on August 1, 2007 and upon reconsideration on March 17, 2008. (Id.) Subsequent to Plaintiff's written request for a hearing, dated June 9, 2008, Plaintiff appeared before Administrative Law Judge Donna A. Krappa ("ALJ Krappa") on October 7, 2009, in

Newark, New Jersey. (Id.) ALJ Krappa issued a decision on November 3, 2009, finding that Plaintiff was not eligible for DIB or SSI benefits based upon her disabilities. (Tr. 28.) The following is a summary of her findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since February 22, 2005, the alleged onset date. (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: diabetes, osteoarthritis, obesity, and an affective disorder. (20 CFR 404.15(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant is generally capable of the exertional demands of sedentary work.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on September 29, 1967, and was 37 years old, which is defined as a younger individual in the age range 18-44, on the alleged disability onset date. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform.

## STATEMENT OF THE FACTS

**A.     Background**

Plaintiff, Waleska Velazquez, was born September 29, 1967. She is divorced, and has two children, age 21 and 18. (Tr. 43.) Plaintiff's height is 5' 3" and she testified that her weight is

usually around 240 lbs. She attended high school but never completed her GED. (Tr. 285.) Plaintiff worked as a machine operator at EJ Brooks from 1995 to 2005, until her alleged disability rendered her unable to work. (Tr. 46-47.)

**B.    Claimed Disabilities**

Plaintiff stopped working in February 2005, allegedly because of her diabetes, osteoarthritis, obesity, and an affective disorder. (Tr. 48.) Plaintiff testified that due to her arthritis and obesity, her knees and feet are swollen and cause her great pain. (Id.) As a result, she cannot sit or stand for extended periods, nor can she walk more than two blocks at a given time. (Tr. 47-50). The arthritis also causes her right hand to lock up. (Tr. 48.) Plaintiff testified that her eighteen year old son lives with her and does much of the cleaning of the house while her boyfriend does most of the cooking. (Tr. 52.) Plaintiff testified that she has a driver's license and can drive a car, she grocery shops, occasionally sweeps, and frequently attends church. (Tr. 49-54.)

**C.    Medical Evidence Considered by the ALJ**

The record indicates that the Plaintiff has been evaluated by physicians and other experts on several occasions.

1.    Dr. Thomas Ortiz's Examination

Plaintiff visited her primary care physician, Dr. Thomas Ortiz of the Forest Hills Family Health Associates, several times between 2004-2008. (Tr. 195-231.) Plaintiff received care for a variety of illnesses. The record indicates that the main concern was Plaintiff's swollen and painful feet, legs, and knees. (Id.) Dr. Ortiz noted that Plaintiff had been hospitalized several times for cellulitis and some minor surgeries. (Id.) Throughout the four years, Plaintiff had been prescribed pain medications, glucose strips for diabetes, and compression gradient stockings.

3

(Id.)  Plaintiff also underwent physical therapy, which, Plaintiff reported, wasn't "helping much." (Tr. 199.)

In addition to Plaintiff's physical impairments, the medical records note that Plaintiff's depression was a "Major Problem." (Tr. 200.) Plaintiff was prescribed various medications for her depression, including Effexor, Xanax, and Prozac. (Tr. 195, 200, 229.) However, due to lack of insurance, Plaintiff discontinued the usage of several of these drugs. (Tr. 199.) Dr Ortiz also noted that Plaintiff smokes 1 to 10 cigarettes a day and is an occasional alcohol drinker. (Tr. 200.)

2. Dr. Henry Rubenstein's Examination

On June 11, 2007, Plaintiff underwent an examination by Dr. Henry Rubenstein, a consultative examiner, at the request of the state agency. (Tr. 166.) Dr. Rubenstein noted that Plaintiff was alert and oriented, yet cried several times throughout the examination. (Tr. 167.) Plaintiff told Dr. Rubinstein the she felt markedly depressed, primarily because her son was killed in a shootout several years earlier. (Id.) Dr. Rubinstein concluded that she was most likely suffering from severe depression. (Id.)

3. Saint Michael's Medical Center

Plaintiff had been evaluated by the physical therapists at Saint Michael's Medical Center on three occasions since April, 2007 for bilateral knee pain. (Tr. 234.) Plaintiff was prescribed a treatment plan consisting of various therapeutic activities and exercises to help improve strength and gait, while decreasing pain. (Tr. 235.) The record indicates the Plaintiff did not comply with attending the treatment sessions. (Tr. 233.)

4. Dr. Rubbani's Evaluation

On June 12, 2007, Plaintiff was examined by Dr. Miriam Rubbani, and orthopedist with the Essex Diagnostic Group. (Tr. 170-171.) Dr. Rubbani's notes indicate that Plaintiff's gait

4

was tandem, non-antalgic, heel to toe. (Id.) Plaintiff had fine motor function and no tenderness in her knees, in the medical or lateral joint lines. (Id.) Additionally, there was no knee instability, no effusion or erythema, and some limitation in hip ranging. (Id.)

     5.     Dr. Anthony Cincotta's Examination

On April 15, 2008, Plaintiff underwent a psychiatric evaluation by Dr. Anthony Cincotta of the Mt. Carmel Guild. (Tr. 285.) Plaintiff told Dr. Cincotta that she had been depressed ever since she was younger when she had been raped. (Id.) She stated that she had tried to hurt herself when she was younger by taking an overdose of pills, however, she had no present desire to hurt herself, or any other person. (Id.) Furthermore, Dr. Cincotta noted that Plaintiff expressed guilt for her son's death. (Id.)

Plaintiff's examination indicated that she was alert and oriented, her speech was normal, and that she was cooperative, friendly, and made good eye contact. (Id.) Dr. Cincotta noted that she had average intelligence and demonstrated good insight and judgment. (Id.) When asked how she felt, Plaintiff stated, "I feel somewhat depressed." (Id.) Plaintiff denied that she possessed suicidal or homicidal ideation, auditory or visual hallucinations, or paranoia. (Id.) In sum, Dr. Cincotta diagnosed Plaintiff with major depression, moderate. (Tr. 286.) Dr. Cincotta recommended that Plaintiff receive therapy and medications. (Id.) ALJ Krappa made note in her decision that Plaintiff did not desire the medications, nor had she returned for a follow up visit. (Tr. 19.)

     6.     Dr. Altschuler's Examination

Between January 2008 and June 2009, Plaintiff was treated by an orthopedist, Dr. Eric Altschuler of the University Hospital Department of Physical Medicine and Rehabilitation for various issues relating to Plaintiff's knee problems, osteoarthritis, and physical therapy. (Tr. 325-461.) Plaintiff was diagnosed with severe osteoarthritis which contributed to the pain and

swelling of both her knees and feet. (Id.) Additionally, Plaintiff complained to Dr. Altschuler about thumb pain. (Tr. 332.) On a scale of 1-10, Plaintiff reported that the level of pain was an 8. (Tr. 456). Plaintiff consistently complained that the injections and physical therapy appointments were unhelpful. (Tr. 325-461.)

## II.  DISCUSSION

A.  **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

### B. Standard for Awarding Benefits Under the Act

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

## C. The Five-Step Evaluation Process

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Gist v. Barnhart, 67 Fed. Appx. 78, 81 (3d Cir. 2003).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(a)(ii), (c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1594(f)(2). If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings apply and give reasons why those listings are not met or equaled. In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." (Id.) An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing." Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is able to perform his past relevant work, he will not be found disabled under the Act. In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120. If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past

work experience, and residual functional capacity. 20 C.F.R. §§ 404.1512(g), 404.1560(c)(1). If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled. Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy. These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity). These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b). When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled. 20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983). The claimant may rebut any finding of fact as to a vocational factor. 20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). Moreover, "the combined impact of the impairments will be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523. However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify her for benefits. See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d

Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

**D.      ALJ Krappa's Findings**

ALJ Krappa applied the five-step sequential evaluation, determining that the Plaintiff was not disabled within the meaning of the Act. (Tr. 15.) ALJ Krappa found that Plaintiff satisfied the first step of the evaluation process, given that Plaintiff has not engaged in substantial gainful activity since February 2005. (Id.) At step two of the evaluation, ALJ Krappa found that Plaintiff has diabetes, osteoarthritis, obesity, and an affective disorder, which qualified as "severe" impairments. (Id.)

At step three, ALJ Krappa concluded that the Plaintiff does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21.) With respect to Plaintiff's knees and back, ALJ Krappa found that they did not meet or equal Listings 1.03-04. (Id.) There was no evidence on the record that Plaintiff received any treatment nor did it restrict her movements. (Id.) There is no listing for obesity. (Tr. 21.) ALJ Krappa noted that plaintiff was not diagnosed with morbid obesity, and it did not affect her arthritis, nor has it resulted in severe diabetes or high blood pressure. (Tr. 22.) Thus, ALJ Krappa found that the combination of obesity and the claimant's other impairments does not meet or equal the criteria of the listed impairments. (Id.)

ALJ Krappa also considered the Plaintiff's mental impairment and found that it does not meet or medically equal the criteria of listing 12.04. (Id.) Plaintiff's mental impairment did not cause at least two "marked" limitations, or one "marked" limitation and "repeated" episodes of decompensation, and therefore the "Paragraph B" criteria were not satisfied. (Id.) Plaintiff lacked evidence to establish the presence of the "Paragraph C" criteria. (Id.)

At step four, ALJ Krappa made the determination that the Plaintiff would be unable to perform her past work as a machine operator. (Tr. 26.) However, ALJ Krappa found that Plaintiff generally is capable of the exertional demands of sedentary work as defined in the Regulations. (Tr. at 23.) In addition, Plaintiff can lift and/or carry 10 lbs. frequently and occasionally; perform unlimited pushing and pulling within the 10 lb. range; sit for a total of 6 hours; sit for one hour at a time with a 3-5 minute stretch break; and stand or walk for 2 total hours. (Id.)

In the fifth and final step, ALJ Krappa considered Plaintiff's age, education, work experience, and residual functional capacity, and concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. 27.) At step 5, ALJ Krappa utilized the testimony of vocational expert Mr. Meola to determine the extent to which Plaintiff's limitations erode the unskilled sedentary occupational base. (Id.)

The ALJ presented three hypotheticals to the expert. In the first hypothetical, ALJ Krappa asked of the existence of simple, unskilled, lightly-exertional jobs which require only light exertion and which would allow the Plaintiff to take several breaks throughout the day. (Tr. 62-63.) Meola testified that 1,700 such jobs existed in the Northern New Jersey region and 35,000 existed nationally. (Id.) Considering the aforementioned limitations, but at the sedentary level for the second hypothetical, Meola identified such jobs as a prep-worker, weight tester, assembler, ampule sealer, mounter, hand mounter, carding machine operator. (Tr. 64.) For the seven jobs mentioned, there existed around 1,200 jobs at the regional level and 35,000 jobs at the national level. (Id.) With the third hypothetical, ALJ Krappa asked Meola to consider jobs in which the plaintiff could only sit and stand for 15 minutes at a time, and would need to lie down a few times during the workday. (Id.) As to these limitations, Meola testified to the unlikeliness of such jobs existing in the economy. (Id.)

### E.     Analysis

Plaintiff contends that ALJ Krappa's decision should be reversed and Plaintiff should be awarded all DIB and SSI benefits because the ALJ's decision was not supported by substantial evidence. (Pl.'s. Mem. L. at 2.)  Plaintiff contends that: (1) ALJ Krappa ignored the impact of Plaintiff's psychiatric impairment; and (2) ALJ Krappa did not rely on substantial evidence that there are a significant number of jobs that the Plaintiff can do.

#### 1.     Did the ALJ  Adequately Consider the Impact of Plaintiff's Psychiatric Impairment?

Plaintiff claims that ALJ Krappa failed to adequately consider the impact of plaintiff's psychiatric impairment by failing to order a consultative psychiatric examination and to have the claim reviewed by an expert. (Pl's. Memo. L. at 8.)   However, the record shows that ALJ Krappa relied on the psychiatric evaluation of Dr. Anthony Cincotta. (Tr. 18-19.)  Plaintiff has failed to point to any legal or logical basis to find that this expert examination was insufficient.

 At Step 3 of the analysis,  ALJ Krappa determined that the Plaintiff's impairment was not severe enough to "preclude any gainful work." 20 C.F.R. § 404.1520(d).  ALJ Krappa considered whether Plaintiff's impairment satisfied either "Paragraph B" or "Paragraph C" criteria. (Tr. 22.)  It is because ALJ Krappa found that Plaintiff's mental impairment did not cause significant marked limitations, restrictions, or episodes of decompensation that she concluded that Plaintiff's depression would not preclude her from all work.  (Id.)

Plaintiff introduced no additional evidence of a mental impairment to contradict the psychiatric evidence in the record. The ALJ adequately considered the medical evidence of Plaintiff's psychiatric impairment, and her decision is supported by substantial evidence.

    **2.**    **Did the ALJ Supply Substantial Evidence that there are a Significant Number of Jobs in the National Economy that Plaintiff can Perform?**

Plaintiff alleges that the record does not contain substantial evidence to support ALJ Krappa's decision that there are a "significant" number of jobs in the national economy which the Plaintiff can perform. (Pl. Mem. L. at 12-13.) Plaintiff argues that finding 1,200 jobs in the regional economy and 35,000 jobs in the national economy is not a significant number of jobs. (Id.)

At step five of the analysis, the burden shifts to the Commissioner to prove that the Plaintiff retains the residual functioning capacity to perform jobs existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(g), 416.920(g). ALJ Krappa, concluding that Plaintiff could not return to past relevant work, relied on Mr. Meola for expert vocational testimony. (Tr. 27.) The Code of Federal Regulations states that a vocational expert may provide reliable evidence regarding the existence of jobs in the national economy that plaintiff can perform. See 20 C.F.R. §§ 404.1566, 416.966. "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566.

Vocational expert Meola was given three different hypotheticals in which he opined on the number of jobs existing in the economy at both the national and regional level. (Tr. 62-63.) The second hypothetical was tailored to Plaintiff's circumstances, and Plaintiff has not objected to the appropriateness of the second hypothetical. (Pl. Mem. L. at 11.) Meola presented seven jobs that Plaintiff could perform, not excluding the possibility that a greater number existed. (Tr. 64.) As to these seven jobs, Meola stated that there existed approximately 1,200 jobs at the regional level and 35,000 at the national level. (Id.)

Plaintiff's argues that these numbers are too small to qualify as significant. (Pl. Mem. L. at 13). However, the Third Circuit has stated that 200 jobs in the regional economy are "significant"

when supported by substantial evidence. Cragie v. Bowen, 835 F.2d 56, 58 (3rd Cir. 1987). The Court stressed that this regional figure "is a clear indication that there exists in the national economy other substantial gainful work which [plaintiff] can perform" Id. Thus, the existence of 1,200 jobs in the regional economy and 35,000 in the national economy is a significant number of jobs within the meaning of the regulations.

The ALJ's determination at step five is supported by substantial evidence and will be affirmed.

### III.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

  s/ Stanley R. Chesler  
  STANLEY R. CHESLER, U.S.D.J.

Dated: August 1, 2011